# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

## 2020 ND 110

| | |
|---|---|
| Erica Lynn Sims, | Plaintiff and Appellant |
| v. | |
| Larry David Sims, | Defendant and Appellee |
| and | |
| State of North Dakota, | Statutory Real Party in Interest |

### No. 20190248

Appeal from the District Court of Grand Forks County, Northeast Central Judicial District, the Honorable Jay D. Knudson, Judge.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

Opinion of the Court by Jensen, Chief Justice, in which Justices VandeWalle, Crothers, and Tufte joined. Justice McEvers filed an opinion concurring and dissenting.

Kelsey L. Hankey, Grand Forks, ND, for plaintiff and appellant.

Ward K. Johnson, Grand Forks, ND, for defendant and appellee; submitted on brief.

**Jensen, Chief Justice.**

[¶1]   Erica Sims appeals from a judgment granting her a divorce from Larry Sims.   She argues the district court's parenting time decision is clearly erroneous, the court erred in determining the value of certain marital property, the court erred by failing to award her spousal support, and the court erred by ordering her to reimburse Larry Sims for half of the airfare he incurred related to missed parenting time.

[¶2]   We conclude the district court's property valuations, parenting time, and spousal support decisions are not clearly erroneous.   However, we also conclude the court erred by failing to include all of the parties' stipulated terms related to the property distribution in the judgment without providing an explanation why the provisions were excluded, the court erred in determining the amounts Larry Sims was required to reimburse Erica Sims pursuant to the interim order, and the court abused its discretion by ordering a remedial contempt sanction without finding Erica Sims in contempt.   We affirm in part, reverse in part, and remand.

I

[¶3]   Erica and Larry Sims were married in 1999, and have two children together, GCS and DLS.   The children were 17 and 14 years old at the time of the divorce trial.   Erica Sims sued for divorce in December 2017.

[¶4]   In January 2018, Erica Sims moved for an interim order awarding her temporary primary residential responsibility for the children, ordering Larry Sims to pay child support, awarding her temporary possession of the marital home, ordering the marital expenses be divided, and requiring Larry Sims to pay spousal support.   Larry Sims responded to the motion and agreed to most of Erica Sims' requests, but he requested that neither party be awarded spousal support.   He also stated that he was moving to California and asked for a downward departure in his child support obligation for parenting time travel expenses.

1

[¶5] After a hearing, the district court found the parties stipulated to interim primary residential responsibility for the children and joint decision making, occupation of the marital residence, and that each party would pay one-half of the mortgage payment. The court awarded Erica Sims temporary primary residential responsibility of the children and awarded Larry Sims six weeks of parenting time during the summer and parenting time during the school winter break. The court ordered Larry Sims to pay child support and all transportation costs for the children related to his parenting time. The court denied Erica Sims' request for spousal support. The court ordered Erica Sims would have possession of the marital home and would be responsible for all ordinary maintenance and occupancy costs, but ordered the parties to be equally responsible for any extraordinary repairs and to pay half of the mortgage payment.

[¶6] In June 2018, Larry Sims moved for an order to show cause, alleging Erica Sims violated the interim order by interfering with his summer parenting time. He requested the court order Erica Sims to reimburse him for the cost of the plane tickets for the children to fly to California and to pay his attorney's fees related to the motion. The district court entered an order to show cause. After a hearing, the district court found Erica Sims willfully and intentionally disobeyed the order and denied Larry Sims' right to parenting time. The court found Erica Sims was in contempt, ordered her to reimburse Larry Sims for the cost of the plane tickets, and amended the interim order to require the children to visit Larry Sims in California within a certain period of time and required Erica Sims to reimburse Larry Sims for half of the cost of the new plane tickets.

[¶7] In August 2018, Erica Sims moved for an order to show cause, alleging Larry Sims violated the interim order by failing to pay one-half of the mortgage. Larry Sims responded to the motion and alleged he was financially unable to pay his half of the mortgage payment. The court denied the motion for an order to show cause, but found the interim order was clear and any refusal or deviation from either party's obligation would be considered and resolved in the court's final order.

[¶8]   In December 2018, Larry Sims moved for an order to show cause.  He alleged Erica Sims did not comply with the amended interim order because she failed to ensure the children were on the flight to California for his parenting time during winter break.  He requested the court order Erica Sims to reimburse him for the cost of the plane tickets and that she pay his attorney's fees for the motion.  Erica Sims opposed the motion, arguing she did not disobey the order, she took the children to the airport and through security, but the children left while she was speaking to someone, and the children refused to get on the flight.  The district court granted Larry Sims' motion for an order to show cause and stated the issue would be heard during the divorce trial.

[¶9]   The parties filed a partial marital settlement agreement and parenting plan.  The parties agreed Erica Sims would have primary residential responsibility for the children, subject to Larry Sims' parenting time, Larry Sims would be solely responsible for all transportation costs for his parenting time, and he would receive a child support deviation for the transportation costs.  They agreed to decision making responsibility for the children and the amount of Larry Sims' child support obligation.  They agreed on some of the property and debt distribution and agreed to the valuation date for their property and debts.

[¶10] After a court trial on the remaining issues, the district court distributed the martial estate.  The court awarded Erica Sims a net property award of $73,453.82, including the marital home.  The court awarded Larry Sims a net property award of $6,583.16.  The court denied Erica Sims' request for spousal support.  The court ordered Larry Sims to pay Erica Sims $4,015.10 for his share of the mortgage and auto loan payments pursuant to the interim order. The court awarded Erica Sims primary residential responsibility for the children, set a parenting time schedule, and ordered Larry Sims pay child support of $1,614 per month. The court found there was not sufficient evidence to find Erica Sims in contempt for violating the interim order related to parenting time, but ordered her to reimburse Larry Sims for half of the expenses for the missed parenting time.  Judgment was entered.

3

[¶11] Erica Sims argues the district court's parenting time decision is clearly erroneous. She claims the court ignored significant evidence that was favorable to her and detrimental to Larry Sims, her testimony was corroborated by testimony from the children and the children's therapists, and the record does not support the court's findings.

[¶12] A district court's parenting time decision is a finding of fact subject to the clearly erroneous standard of review. *Dick v. Erman*, 2019 ND 54, ¶ 12, 923 N.W.2d 137. A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, there is no evidence to support it, or if on the entire record we are left with a definite and firm conviction a mistake has been made. *Id.* at ¶ 6. In awarding parenting time, the best interests of the child are paramount. *Id.* at ¶ 12. Parenting time with the non-custodial parent is presumed to be in the child's best interest and is a right of the child. *Id.*

[¶13] Extended parenting time with a fit non-custodial parent is routinely awarded if the child is old enough, absent a reason for denying it. *Dick*, 2019 ND 54, ¶ 13, 923 N.W.2d 137. But a non-custodial parent's parenting time may be limited or eliminated if it is likely to endanger the child's physical or emotional health. *Rustad v. Baumgartner*, 2018 ND 268, ¶ 8, 920 N.W.2d 465. "[A] restriction on visitation must be based on a preponderance of the evidence and be accompanied by a detailed demonstration of the physical or emotional harm likely to result from visitation." *Id.* (quoting *Wolt v. Wolt*, 2010 ND 26, ¶ 38, 778 N.W.2d 786).

[¶14] Erica Sims argued the children were emotionally harmed by parenting time with Larry Sims and requested parenting time be suspended until the children were ready to resume visiting their father. She claimed Larry Sims was responsible for the deterioration of his relationship with the children, he consistently placed the children in the middle of the divorce conflict, and both children experienced physical and mental health problems from the stress and anxiety triggered by their father. She alleged the children's therapists recommended Larry Sims' parenting time be suspended until he could show progress in understanding the children's emotional and mental well-being and

the children feel comfortable seeing him, and the children were clear that they cannot have any parenting time with their father at this time. Larry Sims argued Erica Sims was alienating the children from him, and he requested "standard parenting time" including extended parenting time during the summer and winter break.

[¶15] The district court considered the testimony from the children's therapists, the children, Erica Sims, and Larry Sims. The court found Erica Sims' testimony about the children's relationship with Larry Sims was not "fully honest," she had previously been found in contempt for failing to comply with the interim parenting time order, and she did not take any responsibility for the breakup of the marriage and the difficulty of the continuing relationship between the children and their father. The children testified they do not want to visit their father. DLS testified it was too hard to be away from her mother's home for the summer, but DLS was told she could go to France during the summer for three months, the court stated it was hard to comprehend how DLS had such anxiety she could not go to California for a few weeks to see her father but could travel to a foreign country without parental supervision for three months, and the court stated it indicated the testimony about the girls not being emotionally able to spend time with their father was not entirely truthful. The court found the therapists did not have an opportunity to consider all of the circumstances of the case, Erica Sims did not fully support a relationship between the children and their father, the children's testimony appeared to be contrived, and the divorce was having a profound effect on the children. The court found law enforcement conducted a welfare check at Larry Sims' house during his parenting time and found nothing inappropriate was happening, Larry Sims took the children to do different activities and to visit places in California as the children requested, and he "truly seems to want to be able to continue, or to rebuild, . . . the relationship between him and [the children]." The court found parenting time with Larry Sims was not likely to endanger the children's physical or emotional health and parenting time was appropriate.

5

[¶16] The district court found the testimony from Erica Sims, the children, and the children's therapists was not credible, explaining:

> With all due respect to the opinion of [the children's therapists], the Court notes that their opinions are based primarily on the information given to them by the children and their experiences with the children. Earlier in this case, the therapists wrote letters indicating that it would be appropriate for the girls to have a two week visit with Larry instead of a four week visit. Now they recommend no visit. They clearly want what is best for the children, but it is apparent to the Court that they have not been given the opportunity to consider all the circumstances in this case. It appears to the Court that Erica, despite outward appearances, is not fully supporting a relationship between Larry and the girls. The Court has previously found her in contempt in this case for not following through with parenting time clearly directed in the Interim Order. The Court does not find the testimony of the girls to be particularly forthcoming, and, in fact, it appears that much of the testimony, including the crying, was contrived. The Court is cognizant that the girls are going through a very difficult time right now, given the breakup of the family. There is no doubt, absolutely none, that what is happening between their parents is having a profound effect on the children. However, the Court simply does not come to the conclusion that parenting time with their father is likely to endanger the children's physical or emotional health. Parenting time between Larry and the children is appropriate. It is also appropriate at the same time to craft a parenting time plan that takes into account the emotional state and the emotional needs of the children.

[¶17] The district court ordered Larry Sims have parenting time one weekend each month in North Dakota during the school year at his discretion and with 30-days' notice. The court ordered Larry Sims have extended parenting time at his home during the summer starting two weeks after school is finished and ending three weeks before the start of school. The court also set a schedule for holiday parenting time.

[¶18] "Findings of fact . . . whether based on oral or other evidence, must not be set aside unless clearly erroneous, and the reviewing court must give due

6

regard to the trial court's opportunity to judge the witnesses' credibility."
N.D.R.Civ.P. 52(a)(6). We do not reweigh the evidence or reassess the
witnesses' credibility. *Conzemius v. Conzemius*, 2014 ND 5, ¶ 6, 841 N.W.2d
716. "A choice between two permissible views of the weight of the evidence is
not clearly erroneous, and our deferential review is especially applicable for a
difficult child custody decision involving two fit parents." *Thomas v. Thomas*,
2020 ND 18, ¶ 4, 937 N.W.2d 554 (quoting *Dickson v. Dickson*, 2018 ND 130,
¶ 7, 912 N.W.2d 321).

[¶19] The district court found parenting time with Larry Sims is not likely to
endanger the children's physical or emotional health. Evidence exists in the
record to support the court's findings. Our case law is clear, we will not retry
the case or substitute our judgment for the district court's decision merely
because we might have reached a different result. *Carlson v. Carlson*, 2020
ND 36, ¶ 6, 938 N.W.2d 413. We conclude the court's parenting time decision
is not clearly erroneous.

III

[¶20] Erica Sims raises several issues with the district court's property
distribution, including that the court's valuation of the marital property is
clearly erroneous and that the court failed to include some of the terms of the
parties' partial settlement agreement.

[¶21] The district court must include all marital assets and debts in the
marital estate and then equitably divide the property after applying the *Ruff-
Fischer* guidelines. *Lizakowski v. Lizakowski*, 2019 ND 177, ¶ 7, 930 N.W.2d
609. A court's property valuation and distribution are findings of fact, which
will not be reversed unless they are clearly erroneous. *Id.* at ¶ 6; *Lee v. Lee*,
2019 ND 142, ¶ 6, 927 N.W.2d 104. "A choice between two permissible views
of the evidence is not clearly erroneous if the district court's findings are based
either on physical or documentary evidence, or inferences from other facts, or
on credibility determinations." *Lee*, at ¶ 6 (quoting *Hoverson v. Hoverson*, 2001
ND 124, ¶ 13, 629 N.W.2d 573). The court's valuation depends on the evidence
the parties present, and this Court presumes the court's valuations are correct.

7

*Lee*, at ¶ 6.  A property valuation within the range of evidence is not clearly erroneous.  *Id.* at ¶ 9.

### A

[¶22] Erica Sims argues the district court erred in determining the household goods had a value of $2,000.  She contends that property was already divided in the parties' stipulation and she testified the property was worn down and in disrepair.

[¶23] The parties' testimony about the value of the household goods was conflicting.  Erica Sims testified all of the furniture was falling apart or torn and that she did not think it was in good enough condition that it could be sold at a garage sale.  Larry Sims testified the household goods were worth $15,000.

[¶24] The parties stipulated to the division of the household goods, but district court's valuation was necessary to decide an equitable distribution.  The court explained there was limited evidence about the value of the property and $2,000 was the most reasonable value.  We conclude the court's valuation is within the range of evidence and is not clearly erroneous.

### B

[¶25] Erica Sims argues the court's valuations of Larry Sims' tools, guns, and hunting and fishing gear; her horse tack; and her tools, guns, and bow are clearly erroneous.  She claims the evidence supported the valuations she proposed for these assets.

[¶26] The parties presented conflicting testimony on the valuation of the assets.  The district court's choice between two permissible views of the evidence is not clearly erroneous.  *Lee*, 2019 ND 142, ¶ 6, 927 N.W.2d 104.  The court's valuations were within the range of evidence presented at trial.

[¶27] This Court is not left with a definite and firm conviction a mistake has been made.  We conclude the district court's valuations of these assets were not clearly erroneous.

## C

[¶28] Erica Sims argues the district court erred when it did not consider or include various terms from the parties' partial marital settlement agreement in the judgment. She contends the parties stipulated to include an indemnification clause necessary to protect her interest in Larry Sims' military retirement and that Larry Sims would continue coverage for her as a former spouse under his Survivor Benefit Plan.

[¶29]  The relevant portion of the stipulation states:

> Erica shall be awarded a percentage of Larry's disposable military retired pay, to be computed by multiplying fifty (50) percent times a fraction, the numerator of which is nineteen (19) years of marriage during Larry's creditable military service, divided by Larry's total number of years of creditable military service.  Larry served for a total of twenty-[one] (21) years, therefore, Erica shall receive 1/2 x (19/21) = 45% of Larry's disposable retired pay.  Larry will take no action that would reduce Erica's share of his military retired pay ~~and indemnifying Erica of any reduction~~.  Larry will elect to continue coverage for Erica as a former spouse under his Survivor Benefit Plan and she will be named as the beneficiary of the Survivor Benefit Plan.  Any cost of the Survivor Benefit Plan will be deducted from Erica's monthly payment.  This paragraph may be changed by the decision of the Court regarding Erica's federal retirement earned during the marriage. (The language lined out above was lined out prior to submission to the district court.)

[¶30] The district court included the first two sentences of this paragraph from the settlement agreement in the judgment, but it did not include any of the remaining terms.  The court did not provide any explanation for not including the rest of the parties' stipulation.

[¶31]  This Court has "encouraged parties to reach peaceful settlements of disputes in divorce matters because there is 'strong public policy favoring prompt and peaceful resolution of divorce disputes.'" *Vann v. Vann*, 2009 ND 118, ¶ 12, 767 N.W.2d 855 (quoting *Knutson v. Knutson*, 2002 ND 29, ¶ 8, 639 N.W.2d 495).  We have said "To the extent that competent parties have

voluntarily stipulated to a particular disposition of their marital property, a court ordinarily should not decree a distribution of property that is inconsistent with the parties' contract." *Eberle v. Eberle*, 2009 ND 107, ¶ 15, 766 N.W.2d 477 (quoting *Kramer v. Kramer*, 2006 ND 64, ¶ 6, 711 N.W.2d 164).

[¶32] The district court excluded some of the terms of the parties' settlement agreement without explanation. We reverse the court's property distribution and remand for the court to include the stipulated provisions in the judgment or to provide an explanation why these terms were not included.

IV

[¶33] Erica Sims argues the district court erred in the amounts it ordered Larry Sims to pay for the mortgage payment and household repairs pursuant to the interim order.

[¶34] In the March 8, 2018 interim order, the district court ordered Erica Sims would be responsible for all ordinary maintenance and occupancy costs of the marital home, and "[t]he parties shall be equally responsible for any extraordinary repairs, and any disputes as to this characterization can be addressed at the trial and considered in asset or equity allocation." The court also ordered, "Each party shall pay one-half of the mortgage payment on or before the due date, beginning with the next payment following entry of this Interim Order." The court ordered Larry Sims to pay an F-250 truck loan.

[¶35] At the time of the trial, the parties agreed they were equally responsible for $6,246.13 in home maintenance and repairs pursuant to the interim order. However, the parties did not agree on the amounts Larry Sims was required to pay for his share of the mortgage under the interim order. Erica Sims claimed Larry Sims owed $5,429.70, and Larry Sims claimed he owed $3,600. Erica Sims testified Larry Sims was supposed to be paying half of the monthly mortgage payment, but he did not make any payments after May 2018. Larry Sims testified he initially paid half of the mortgage but he stopped paying his half after May 2018 because he could not afford to pay both the mortgage payment and tax debt. He testified it was necessary for him to pay off the tax

10

debt to maintain his security clearance and keep his job. He testified he paid all but $3,600 for his half of the mortgage.

[¶36] The district court found each party was responsible for paying half of the mortgage for nine months under the terms of the interim order, the mortgage payment was $1,206.60 per month, Larry Sims did not make any mortgage payments after May 2018, and Larry Sims is responsible for reimbursing Erica Sims $3,600 for his half of the missed mortgage payments. The court said it would not include the $3,600 for the missed payments in the property distribution because Larry Sims was responsible to pay that amount while the litigation was pending. The court ordered Larry Sims to reimburse Erica Sims $3,600 for the missed mortgage payments within one hundred eighty days of the notice of entry of judgment. The court also found Larry Sims was responsible for paying a F-250 truck loan pursuant to the interim order, he did not make all of the required payments on the loan, and Erica Sims incurred $415.10 in costs for payments on the loan. The court ordered Larry Sims to reimburse Erica Sims for the auto loan payments. The court did not separately address the home repairs, but ordered:

> Larry shall pay to Erica the amount to reimburse her for costs due to her under the Interim Order. The amount due is $4,015.10. This payment will relieve him of his obligations pursuant to the Interim Order in this action, to include, his share of the mortgage payment and the household repairs, and his obligation to pay for the F-250 truck payment.

[¶37] Erica Sims argues the district court erred in determining the amount Larry Sims was required to pay to reimburse her for his half of the mortgage. She contends Larry Sims is responsible for half of the mortgage payment for the months of June through December, for a total of $4,223.10. The district court found Larry Sims was responsible for half of the $1,206.60 mortgage payment pursuant to the interim order and he did not make any payments after May 2018. The evidence supports the court's finding. However, half of the mortgage is $603.30, the trial was held in December 2018, and the court found Larry Sims did not make any mortgage payments after May 2018. Under the terms of the interim order, Larry Sims was required to pay

11

$4,223.10 for his half of the mortgage for the months of June through December 2018.

[¶38] Erica Sims also argues the district court erred by failing to order Larry Sims to pay half of the household repairs pursuant to the interim order. Both parties agreed in their joint property and debt listing that they were equally responsible for $6,246.13 in home maintenance and repairs pursuant to the interim order. The court ordered Larry Sims to pay Erica Sims $4,015.10 to reimburse her for the costs due under the interim order, including his share of the mortgage payment and household repairs and his obligation to pay for the F-250 truck payment. The total amount the court determined Larry Sims was required to pay under the interim order did not include any amount for the household repairs. The court did not provide an explanation for not ordering Larry Sims to pay any portion of the household repairs.

[¶39] We conclude the district court erred in calculating the amount Larry Sims was required to reimburse Erica Sims for the mortgage payments and by failing to require any reimbursement of the costs of the household repairs, absent an explanation of why the court ordered a lesser amount. We reverse and remand for the court to order Larry Sims to pay half of the household repairs as required under the terms of the interim order and to include the full amount Larry Sims was required to pay for half of the mortgage payment, or to provide an explanation of why it ordered a lesser amount.

V

[¶40] Erica Sims argues the district court erred by failing to award her spousal support. She claims the court did not consider the standard of living established during the marriage, the disparity in earning capacity, her foregone opportunities and contributions to Larry Sims' earning ability, and the unequal burdens the divorce created upon the parties.

[¶41] The district court's decision about spousal support is a finding of fact, subject to the clearly erroneous standard of review. *Tarver v. Tarver*, 2019 ND 189, ¶ 15, 931 N.W.2d 187. The court may award spousal support under N.D.C.C. § 14-05-24.1 after taking the parties' circumstances into

consideration. "The court must consider the needs of the spouse seeking support and the ability of the other spouse to pay." *Tarver*, at ¶ 15. The court must also consider the *Ruff-Fischer* factors, which include:

> [T]he respective ages of the parties, their earning ability, the duration of the marriage and conduct of the parties during the marriage, their station in life, the circumstances and necessities of each, their health and physical condition, their financial circumstances as shown by the property owned at the time, its value at the time, its income-producing capacity, if any, whether accumulated before or after the marriage, and such other matters as may be material.

*Id.*

[¶42] The district court made findings about the *Ruff-Fischer* factors, Erica Sims' need for spousal support, and Larry Sims' ability to pay. The court found Erica Sims is currently employed close to full-time, her annual pay from employment is at least $37,123.94, she receives $1,278 per month in military disability, she has four college degrees including a master's degree, she will receive $1,614 per month in child support, and $1,013 per month of Larry Sims' military retirement. The court found Erica Sims has the ability to work full time and increase her monthly income, she will immediately receive a portion of Larry Sims' retirement, she will have the retirement accounts in her name, and she is receiving the majority of the value of the marital estate. The court found Erica Sims sacrificed her military career and some of her earning ability, but her sacrifice was mitigated by the fact that she earned multiple educational degrees during the marriage. The court found Erica Sims alleged $6,100 in monthly living expenses, she has a monthly income of $5,487.82 but it would be higher if she worked full time, and that she would be able to fully cover her monthly expenses if she worked full time. The court found Larry Sims' monthly income after the divorce will be $7,618.46 and his expenses will be approximately $4,775. The court concluded, "Based on the financial needs of the parties and their ability to pay, and also based on the distribution of the value of marital estate, the Court finds neither party needs spousal support and no spousal support will be awarded."

13

[¶43] Evidence in the record supports the district court's findings. We conclude the court's spousal support decision is not clearly erroneous.

VI

[¶44] Erica Sims argues the district court erred by ordering her to reimburse Larry Sims for the transportation costs associated with his missed parenting time.

[¶45] Larry Sims requested that the court hold Erica Sims in contempt for failing to ensure the children were on a flight so he could exercise his parenting time in California and that she reimburse him for the cost of the plane tickets. The district court found there was not sufficient evidence to find Erica Sims in contempt and the testimony indicated Erica Sims put the children on the plane to travel to California and the children snuck off on their own accord. The court further found, "However, as a result, it is also not appropriate for Larry to bear the full cost of the visitation expenses for visits with the children that never happened, regardless of whether or not the children were behind the denial of parenting time." The court ordered Erica Sims to reimburse Larry Sims for half of the expense of the missed parenting time.

[¶46] "Contempt of court" includes the "[i]ntentional disobedience, resistance, or obstruction of the authority, process, or order of a court[.]" N.D.C.C. § 27-10-01.1(1)(c). Under N.D.C.C. § 27-10-01.4(1), a court may impose a remedial sanction for contempt, including the payment of an amount sufficient to compensate a party for a loss or injury suffered as a result of the contempt, including an amount to reimburse the party for costs or expenses incurred as a result of the contempt. "The determination whether a contempt has been committed and remedial sanctions are warranted lies within the sound discretion of the trial court, and its decision will not be overturned on appeal unless there is a clear abuse of discretion." *Kautzman v. Kautzman*, 2002 ND 118, ¶ 8, 647 N.W.2d 684 (quoting *Harger v. Harger*, 2002 ND 76, ¶ 14, 644 N.W.2d 182). The court abuses its discretion when it acts in an arbitrary, unreasonable, or unconscionable manner, or it misinterprets or misapplies the law. *Cook v. Cook*, 2020 ND 11, ¶ 5, 937 N.W.2d 286.

[¶47] The district court found there was not sufficient evidence to find Erica Sims in contempt. The interim order states Larry Sims "is responsible for all transportation costs for the children related to his parenting time." The court imposed a remedial sanction by ordering Erica Sims to pay half of the costs of the plane tickets for the missed parenting time.

[¶48] We conclude the district court abused its discretion by imposing a remedial contempt sanction after finding Larry Sims failed to prove Erica Sims was in contempt. We reverse the district court's order.

## VII

[¶49] Erica Sims argues the district court abused its discretion by ordering her to reimburse Larry Sims for transportation costs if the children do not comply with the ordered parenting time in the future.

[¶50] The district court allocated parenting time costs, ordering:

> Larry shall be solely responsible for all costs and providing transportation for his parenting time. Larry is receiving a child support deviation based upon him being solely responsible for transportation costs. Should Erica or the children not comply with the parenting time as ordered, Erica shall reimburse Larry for the full cost any transportation related expenses associated with the parenting time within seven (7) days. This section does not preclude Larry from seeking an order to show cause with the Court for violations of the Judgment.

[¶51] Erica Sims argues the district court's order imposes a remedial contempt sanction for future acts without notice and a hearing. However, the court did not order a remedial sanction for future contempt. The court allocated future transportation costs for parenting time dependent upon whether the ordered parenting time occurs. It is not an abuse of discretion for a court to allocate parenting time expenses dependent upon whether the children actually visit. We conclude the court did not abuse its discretion.

15

# VIII

[¶52] We have considered the remaining issues and arguments and conclude they are either unnecessary to our decision or are without merit. We affirm the judgment in part, reverse in part, and remand.

[¶53] Jon J. Jensen, C.J.
      Jerod E. Tufte
      Gerald W. VandeWalle
      Daniel J. Crothers

**McEvers, Justice, concurring and dissenting.**

[¶54] I agree with the majority in sections I through VI. For the reasons set forth below, I respectfully dissent in regard to section VII.

[¶55] As noted by the majority in section III(C), the parties stipulated to various terms in a marital settlement agreement. Majority, at ¶ 28. One of the terms stipulated to was child support, which included "a deviation for transportation costs to exercise [Larry Sims'] parenting time." The stipulation further provided under a transportation provision that "Larry shall be solely responsible for all costs and providing transportation for his parenting time. Larry is receiving a child support deviation based upon him being solely responsible for transportation costs." The district court incorporated the terms of the stipulation into the judgment under its "child support" provision, but effectively changed the terms of the stipulation by adding the following transportation provision:

> Should Erica *or* the children not comply with the parenting time as ordered, Erica shall reimburse Larry for the full cost [of] any transportation related expenses associated with the parenting time within seven (7) days. This section does not preclude Larry from seeking an order to show cause with the Court for violations of the Judgment.

[¶56] Similar to the majority's discussion in section III(C), the district court included portions of the stipulation and then modified the transportation provision without an explanation. Majority, at ¶ 30. Here, it appears the court

16

is attempting to provide a sanction for a prospective contempt, based on the previous experience where the children deliberately "snuck off" at the airport to avoid visiting their father.  As noted in section VI of the majority opinion, Erica Sims was not found in contempt for this action.  Majority, at ¶ 45. Similar to the conclusion on the contempt issue, the court abused its discretion in modifying the terms of the stipulation without an explanation, and effectively imposed a prospective sanction without a finding of contempt. Should the children decide to "sneak off" again, Erica Sims will be paying for that indiscretion twice, first by having the agreed upon deviation reduce the child support she receives and then by having to reimburse Larry Sims for travel expenses he stipulated to pay.

[¶57] I would reverse and remand the district court's allocation of transportation for parenting time expenses.

[¶58] Lisa Fair McEvers