# IN THE SUPREME COURT
## STATE OF NORTH DAKOTA

### 2021 ND 33

| | |
|---|---|
| Steven Mark Orwig, | Plaintiff, Appellee, and Cross-Appellant |
| v. | |
| Mary Caroline Orwig, | Defendant, Appellant, and Cross-Appellee |

### No. 20200123

| | |
|---|---|
| Orwig's Livestock Supplements, Inc., | |
| Orwig's Tubs International Inc., and | |
| MVP Transport, Inc., | Plaintiffs and Appellees |
| v. | |
| Mary C. "Marcy" Orwig, | Defendant, Third-Party Plaintiff, Appellant, and Cross-Appellee |
| v. | |
| Steven Orwig, | Third-Party Defendant, Appellee, and Cross-Appellant |

### No. 20200124

Appeal from the District Court of Dickey County, Southeast Judicial District, the Honorable Cherie L. Clark, Judge.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

Opinion of the Court by VandeWalle, Justice.

Gregory W. Liebl (argued) and Alexis L. Doree (on brief), Fargo, ND, for plaintiff, appellee, and cross-appellant, and third-party defendant, appellee, and cross-apellant Steven Mark Orwig.

Michael T. Andrews (argued) and Ashley K. Champ (on brief), Fargo, ND, for plaintiffs and appellees Orwig's Livestock Supplements, Inc., Orwig's Tubs International Inc., and MVP Transport, Inc.

Jonathan T. Garaas, Fargo, ND, for defendant, appellant, and cross-appellee, and defendant, third-party plaintiff, appellant, and cross-appellee Mary Caroline Orwig.

## Orwig v. Orwig
## Nos. 20200123, 20200124

**VandeWalle, Justice.**

[¶1]   Mary Orwig appealed and Steven Orwig cross-appealed from a divorce judgment distributing the parties' property and awarding Mary Orwig spousal support. Mary Orwig argues the district court erred in determining the value of certain property, distributing the parties' assets, and failing to award her permanent spousal support. Steven Orwig argues the court erred by ordering him to pay Mary Orwig's attorney's fees. We affirm the district court's property division and spousal support award, reverse its attorney's fees award, and remand.

I

[¶2]   In September 2016, Steven Orwig sued Mary Orwig for divorce. They co-owned Orwig's Livestock Supplements, Inc. ("OLS"); Orwigs Tubs International, Inc. ("OTI"); and MVP Transport, Inc. (collectively "Corporations"). Before the divorce action, the Corporations sued Mary Orwig, alleging she made unauthorized transactions on the Corporations' behalf, including opening credit card accounts in the name of the Corporations and using the credit cards for personal use. The Corporations also alleged Mary Orwig wrongfully detained and controlled their property. The Corporations requested the district court enjoin Mary Orwig from transacting business on behalf of the Corporations and remove her as an officer and director of the Corporations.

[¶3]   The district court consolidated both lawsuits. The court granted a preliminary injunction against Mary Orwig prohibiting her from transacting business on behalf of the Corporations, and later ordered her to return corporate property in her possession. Steven Orwig moved for an order to sell the parties' Arizona real property. Mary Orwig opposed the sale. The court ordered the sale of the Arizona property. The court later entered three contempt orders related to the orders to return corporate property and sale of the Arizona property. Mary Orwig appealed from the three contempt orders.

This Court dismissed the appeals of the first two contempt orders, reversed the third contempt order, and remanded. *See Orwig v. Orwig*, 2019 ND 78, ¶ 1, 924 N.W.2d 421.

[¶4] After a court trial, the district court determined the Corporations' monetary claims and Mary Orwig's counterclaims would be addressed through the divorce. The court determined the value of the parties' assets and debts and distributed the marital estate. The court found Mary Orwig committed marital waste, wasted corporate funds, diverted corporate and marital assets, expressed an intention to deplete the Corporations and destroy Steven Orwig, and abused her discretion and authority with respect to the Corporations and Steven Orwig as a shareholder. The court determined the value of the Corporations and awarded the Corporations to Steven Orwig, including an industrial site and manufacturing facility. Steven Orwig was also awarded the farmland and residential site and pasture. Steven Orwig received a net property award of $1,137,719.53, and Mary Orwig received a net property award of $1,090,720.71. The court found its property distribution was equitable considering Mary Orwig's marital and corporate waste. The court awarded Mary Orwig $5,500 per month in spousal support starting in March 2020 and continuing until March 31, 2030. The court ordered Steven Orwig to pay $105,000 of Mary Orwig's attorney's fees. Judgment was entered.

II

[¶5] Mary Orwig claims the district court violated due process and tainted the proceedings by reviewing before the trial the file in this case and a file in a prior case that was dismissed. She contends the court cannot take judicial notice of the dismissed action, except for the act of dismissal.

[¶6] We review a district court's decision to take judicial notice of evidence under an abuse of discretion standard. *State v. Soucy*, 2020 ND 119, ¶ 4, 943 N.W.2d 755; *Opp v. Matzke*, 1997 ND 32, ¶ 9, 559 N.W.2d 837. A court abuses its discretion when it acts in an arbitrary, unreasonable, or unconscionable manner, it misinterprets or misapplies the law, or if its decision is not the product of a rational mental process leading to a reasoned determination. *Soucy*, at ¶ 4.

[¶7]  Under N.D.R.Ev. 201, a court may take judicial notice of adjudicative facts that are not subject to reasonable dispute because they are generally known within the trial court's territorial jurisdiction or can be accurately determined from sources whose accuracy cannot reasonably be questioned. "On timely request, a party is entitled to be heard on the propriety of taking judicial notice and the nature of the fact to be noticed. If the court takes judicial notice before notifying a party, the party, on request, is still entitled to be heard." N.D.R.Ev. 201(e). "[A] district court may take judicial notice of evidence presented in a closely related case, particularly when the judge and parties are the same in both proceedings." *Frisk v. Frisk*, 2006 ND 165, ¶ 22, 719 N.W.2d 332.

[¶8]  Prior to trial, the Corporations moved for the district court to take judicial notice of the Corporations' prior action against Mary Orwig, which was dismissed without prejudice on the parties' stipulation, and the Corporations' current action against Mary Orwig that was consolidated with the divorce action. Mary Orwig had notice and an opportunity to respond to the motion. The court took judicial notice of what occurred in this case and the Corporations' prior action against Mary Orwig.

[¶9]  It was not error for the court to review the file in the current case before trial. *See State v. Cook*, 2020 ND 69, ¶ 12, 940 N.W.2d 605 (stating a court does not need to take judicial notice of matters that are already in the record in that case and N.D.R.Ev. 201 does not apply). We also conclude the court did not abuse its discretion by taking judicial notice of the prior case involving the same parties.

III

[¶10] Mary Orwig argues the district court's admission and consideration of the deposition of the Corporations' general manager, Kathryn Petersen, was improper. She contends Petersen was available to testify at the time of trial and the deposition was not admissible under N.D.R.Civ.P. 32. She also claims the deposition was not used only for impeachment purposes, Petersen testified to irrelevant facts, and her deposition testimony contained hearsay statements.

3

[¶11] Steven Orwig testified Petersen is the Corporations' general manager. Petersen's testimony was taken by deposition in anticipation of her not being available to testify during the trial. During a pre-trial hearing, Mary Orwig acknowledged Petersen's deposition was taken for use at trial. The trial was originally scheduled for August 19, 2019, but was continued to allow the parties to pursue settlement negotiations. On August 19, 2019, the district court stated it had not decided whether to allow the deposition, but indicated Petersen may be required to appear if she was available once the trial continued. The court ultimately allowed the deposition under N.D.R.Civ.P. 32(a)(3).

[¶12] The district court has discretion in admitting deposition testimony under N.D.R.Civ.P. 32, and the court's decision will be reversed on appeal only upon a clear showing that the court abused its discretion. *Heng v. Rotech Med. Corp.*, 2006 ND 176, ¶ 27, 720 N.W.2d 54.

[¶13] Under N.D.R.Civ.P. 32(a)(3), "An opposing party may use for any purpose the deposition of a party or anyone who, when deposed, was the party's officer, director, managing agent, or designee under Rule 30(b)(6) or 31(a)(4)." Rule 32(a)(3), N.D.R.Civ.P., authorizes an "opposing party" to use the deposition of a party's managing agent or designee.

[¶14] Petersen's deposition was offered by the Corporations and Petersen is the Corporations' general manager. The Corporations asserted the deposition was taken for the purpose of marshalling the evidence supporting their claims. Steven Orwig also stated on the first day of trial that he was offering the deposition transcript to the extent he needed to offer it. The deposition was offered by the Corporations and was not offered by an "opposing party."

[¶15] The Corporations argue the deposition was also admissible under N.D.R.Civ.P. 32(a)(4)(B) because Petersen was going to be out of the country on the original trial date. Rule 32(a)(4)(B), N.D.R.Civ.P., allows the deposition of a witness to be used if the witness is unavailable because "the witness is more than 100 miles from the place of hearing or trial, or is outside the state, unless it appears that the witness's absence was procured by the party offering

4

the deposition." Petersen was unavailable on the original trial date and her deposition was taken in anticipation of her being unavailable with the deposition being used to replace her trial testimony. However, the trial was continued to allow the parties to pursue settlement negotiations. There was no evidence Petersen was not available when the trial was actually held.

[¶16] Under N.D.R.Civ.P. 61, "At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights." S*ee also Heng*, at ¶ 27; *Staiger v. Gaarder*, 258 N.W.2d 641, 646 (N.D. 1977) (stating admission of a deposition may constitute harmless error if the testimony is cumulative of other properly admitted evidence or if the appellant fails to assert that prejudice resulted from the erroneous admission). "[I]n a non-jury case the court should admit all evidence which is not clearly inadmissible because a judge, when deliberating the ultimate decision, is capable of distinguishing between admissible and inadmissible evidence." *Rath v. Rath*, 2018 ND 138, ¶ 17, 911 N.W.2d 919 (quoting *Interest of B.B.*, 2007 ND 115, ¶ 10, 735 N.W.2d 855). "In a bench trial, we presume the court only considered competent evidence, and it is not reversible error to admit incompetent evidence unless the evidence induced an improper finding." *Rath*, at ¶ 17 (quoting *B.B.*, at ¶ 10). We have explained:

> In the trial of a nonjury case, it is virtually impossible for a trial judge to commit reversible error by receiving incompetent evidence, whether objected to or not. An appellate court will not reverse a judgment in a nonjury case because of the admission of incompetent evidence, unless all of the competent evidence is insufficient to support the judgment or unless it affirmatively appears that the incompetent evidence induced the court to make an essential finding which would not otherwise have been made. . . . On the other hand, a trial judge who, in the trial of a nonjury case, attempts to make strict rulings on the admissibility of evidence, can easily get his decision reversed by excluding evidence which is objected to, but which, on review, the appellate court believes should have been admitted.

*Haas v. Hudson & Wylie LLP*, 2020 ND 65, ¶ 14, 940 N.W.2d 650 (quoting *Fuhrman v. Fuhrman*, 254 N.W.2d 97, 99 (N.D. 1977)).

[¶17] Mary Orwig has not alleged any testimony from the deposition induced the court to make an essential finding which would not otherwise have been made or explained how the admission of the deposition prejudiced her. We conclude any error in admitting the deposition was harmless.

IV

[¶18] Mary Orwig contends the district court erred by ordering disgorgement of her corporate stock and the compensation and rental income she was due from the Corporations as a penalty for perceived wrongdoing.

[¶19] When a corporation is a closely held corporation and both parties to the divorce proceeding own all of the corporation's stock, we have said, "It is a waste of judicial, and the parties', resources to initiate a separate action for equitable relief when this matter could have been resolved in the pending divorce action." *Grinaker v. Grinaker*, 553 N.W.2d 200, 203 (N.D. 1996). We have held it is a mistake to keep former spouses together in a business relationship that will inevitably lead to more litigation. *Fisher v. Fisher*, 1997 ND 176, ¶ 27, 568 N.W.2d 728. We acknowledged courts have "generally avoided splitting stock in a closely held corporation between contentious divorcing spouses in a way that continues their conflicts in an ongoing business relationship." *Id.* at ¶ 32. We have expressed a preference for a distribution of the marital estate that will disentangle the parties' financial affairs. *Id.* at ¶ 33. We explained, "Disentanglement allows one former spouse to operate the business without harmful interference by the other, and it reduces further conflict between them." *Id.*

[¶20] The Corporations requested the district court remove Mary Orwig as a director or officer under N.D.C.C. § 10-19.1-41.1. Steven and Mary Orwig are the sole owners of OLS and OTI. The court found Steven Orwig, Mary Orwig, and their son each own 33.3% of MVP. The district court resolved the Corporations' claims within the divorce proceeding and awarded Steven Orwig the Corporations and other assets related to the Corporations. The court found

Mary Orwig breached her duty to the Corporations and Steven Orwig, she wasted corporate and marital assets, she diverted corporate assets, she engaged in malicious and dishonest conduct, the Corporations suffered financially as a result of her conduct, and "that without Mary's interference, the Corporations are viable, profitable businesses." The court also ordered the Corporations and Mary Orwig will have no obligations or liabilities to each other. We conclude the court did not err by deciding the Corporations' claims within the divorce proceeding or by awarding the parties' interest in the Corporations to Steven Orwig to disentangle the parties' financial affairs and business connection.

V

[¶21] Mary Orwig argues the district court's property valuations and distribution are clearly erroneous.

[¶22] A district court's property valuations and division are findings of fact, which will not be reversed on appeal unless they are clearly erroneous. *Wald v. Wald*, 2020 ND 174, ¶¶ 11, 19, 947 N.W.2d 359. A finding of fact is clearly erroneous when it is induced by an erroneous view of the law, there is no evidence to support it, or, after reviewing the entire record, this Court is left with a definite and firm conviction a mistake has been made. *Id.* at ¶ 11. The district court's valuations depend on the evidence the parties present, and we presume the court's valuations are correct. *Sims v. Sims*, 2020 ND 110, ¶ 21, 943 N.W.2d 804. A court's property valuation is not clearly erroneous if it is within the range of evidence presented. *Wald*, at ¶ 11. In an appeal after a bench trial, this Court will not second-guess a district court's credibility determinations. *Id.* at ¶ 27.

A

[¶23] Mary Orwig argues the district court erred by failing to determine the value and to distribute the manufacturing facility and the 6.8 acres of land upon which it sits. She also argues the court's $287,000 valuation for OLS and OTI is clearly erroneous. She claims the valuation is based on an income approach appraisal, which excluded real estate investments from the value of

7

the businesses. She contends the manufacturing facility, land, and tenant fixtures have a much higher value than the court found OLS and OTI were worth and the value of those assets needed to be included.

[¶24] The district court found OLS and OTI together are worth $287,000 and the parties' ownership interest in MVP is worth $64,000. The court found the Corporations' accountants testified the Corporation's tax return should not be the sole basis to value the businesses and would result in an unreliable valuation due to double counting, and Mary Orwig did not provide any credible conflicting evidence. The court stated it relied on appraisal reports completed by Steven Orwig's witnesses, Jeff Berg and Shawn Stumphf, in valuing the martial property. The court found Berg appraised the farmland; an industrial site, which includes a manufacturing facility and land; residential site and pasture; and some vehicles. The court found Berg is an accredited appraiser; he used three different valuation methods to appraise the property; he was the only credible, qualified witness testifying to the value of the parties' real property and vehicles; and Mary Orwig provided no credible evidence to contradict the valuations. The court found Stumphf conducted the business valuations for the Corporations, which incorporated Berg's valuations as to corporate and marital assets. The court explained its valuations of the Corporations were based on Stumphf's valuations because Mary Orwig failed to provide evidence contradicting Stumphf's valuations and Stumphf's valuations were credible as to method.

[¶25] The evidence supports the district court's findings. Berg testified he determined the farmland was worth $380,000, the industrial site with land and buildings and equipment was worth $1.5 million, and the residential site with the house and other buildings was worth $560,000. Berg testified about three approaches that can be used to appraise property, and then explained how he determined the value of the property in this case. Stumphf testified that he was hired to do business valuations for OLS, OTI, and MVP and that he relied on Berg's real estate and equipment appraisal report in making his appraisals of the businesses. He testified that he appraised OLS and OTI together because they are consolidated entities and cannot operate individually and that he concluded OLS and OTI have a value of $287,064. He

8

testified the parties' interest in MVP was worth $64,000. He testified there are three approaches that can be taken for valuation of a business, and he explained how he reached his conclusion on the valuation of OLS and OTI. Stumphf testified that the farmland, residential site and pasture, and some equipment was not included in the business valuations; and that the industrial site and manufacturing facility were included in the valuation of OLS and OTI because the land and manufacturing facility is a "special use" property that cannot be separated from the business and operated separately.

[¶26] The district court's valuations of OLS and OTI, including the industrial site and manufacturing facility, were based on Berg and Stumphf's appraisals. The court found Berg and Stumphf's appraisals were the only credible evidence of the value of the property and businesses and Mary Orwig did not present any conflicting evidence. The court determined the value of the industrial site property and manufacturing facility and included that property in the distribution. The court's valuation of OLS and OTI was within the range of evidence, and the evidence supports the court's findings.

B

[¶27] Mary Orwig contends the district court erred in determining R&J Orwig Inc. did not have any value. She claims it must have value because it produces $5,000-$9,000 in income annually. Steven Orwig argues the ownership interest has not yet vested, and his mother has given him money from R&J Orwig "out of the goodness of her heart."

[¶28] The district court awarded Steven Orwig "the 5% ownership interest in the feed supplement business owned by members of the Orwig family." The court found R&J Orwig is owned by Steven Orwig's family. The court included it as a financial asset on the list of the parties' assets and debts for distribution, but found it was worth $0.

[¶29] Steven Orwig testified he receives money from R&J Orwig, but the amount varies each year. He testified his mother owns the company and he believes he will receive an ownership interest in the company after his mother's death, but he does not currently have an ownership interest in the company.

9

Courts should not include in the property distribution any interest in a business which the parties do not own. *See Paulson v. Paulson*, 2010 ND 100, ¶ 19, 783 N.W.2d 262 (stating the asset must be a present property interest, and not just a mere expectancy, in order to be considered a property asset in the marital estate); *Lohstreter v. Lohstreter*, 1998 ND 7, ¶ 30, 574 N.W.2d 790 (stating a future inheritance cannot be considered by the court for property division because it is not a vested present interest and is speculative). Evidence established the parties do not presently have an ownership interest in R&J Orwig and the property should not be included in the property distribution. Any error, however, is harmless because the district court found that R&J Orwig is owned by Steven Orwig's family and that the interest did not have any value.

## C

[¶30] Mary Orwig argues the district court should have included her and Steven Orwig's unpaid salary and rental income from the Corporations in the property distribution.

[¶31] The district court found both parties were owed back salaries and rent from the Corporations, but Steven Orwig was owed more. The court found the amounts owed to Mary Orwig are far outweighed by the damages she caused the Corporations and the marital waste, therefore Mary Orwig was not owed any salary or rent and the issue was taken into consideration in the division of property and spousal support. The court considered the evidence about marital waste, Mary Orwig's breach of duty to the Corporations and fraud, and made findings about a number of examples of waste and expenses the Corporations incurred as a result of Mary Orwig's actions.

[¶32] Steven Orwig testified they were both owed about the same amount in rent and salary from the Corporations, the Corporations are having a hard time and it was decided the bills would get paid before Steven and Mary Orwig would be paid, and the damage Mary Orwig caused to the Corporations was more than what she was owed. Evidence supports the district court's findings, and the court did not err by failing to include any unpaid salary or rental income in the property distribution.

## D

[¶33] The evidence supports the district court's findings. The court's property valuations are within the range of evidence. We conclude the court's property valuations and distribution are not clearly erroneous.

## VI

[¶34] Mary Orwig argues the district court should have ordered permanent spousal support and the court erred in crediting her with non-existent income, including imputing $3,333 in potential gross monthly earnings and income from a horse business.

[¶35] A district court's decision about spousal support is a finding of fact, which will not be reversed on appeal unless it is clearly erroneous. *Tarver v. Tarver*, 2019 ND 189, ¶ 15, 931 N.W.2d 187. In deciding whether to award spousal support, the court must consider the needs of the spouse seeking support and the ability of the other spouse to pay. *Id.* The court must also consider the *Ruff-Fischer* factors, including:

> [T]he respective ages of the parties, their earning ability, the duration of the marriage and conduct of the parties during the marriage, their station in life, the circumstances and necessities of each, their health and physical condition, their financial circumstances as shown by the property owned at the time, its value at the time, its income-producing capacity, if any, whether accumulated before or after the marriage, and such other matters as may be material.

*Id.* (quoting *Knudson v. Knudson*, 2018 ND 199, ¶ 11, 916 N.W.2d 793).

[¶36] We have said permanent spousal support is appropriate when a spouse cannot be rehabilitated or to equalize the burdens of divorce. *O'Keeffe v. O'Keeffe*, 2020 ND 201, ¶ 11, 948 N.W.2d 848. Rehabilitative support is appropriate to restore a spouse to independent economic status or to equalize the burden of divorce by increasing the receiving spouse's earning capacity. *Id.* There is a preference to award rehabilitative support when it is possible to restore a spouse to independent economic status or when the burden of the

11

divorce can be equalized by increasing a disadvantaged spouse's earning capacity. *Id.* at ¶ 13.

[¶37] The district court made findings about each of the *Ruff-Fischer* factors. The court found the marriage was long-term, Steven Orwig has a much higher earning capacity, Mary Orwig has a college degree but may find it difficult to reenter the work force at 54 years old, Mary Orwig has the capacity to earn $40,000 a year with a college degree, and she will also be awarded a viable horse business. The court also found Mary Orwig has caused excessive marital and corporate waste and she increased the costs of the litigation. The court considered the parties' monthly expenses and found Mary Orwig's alleged monthly expenses were not credible and included expenses for the Arizona ranch that no longer exists and expenses for her horse business. The court found Mary Orwig's monthly expenses are $8,957.68 and she has potential gross monthly earnings of $3,333, which causes a shortfall, but the horse business will also produce income. The court also considered Steven Orwig's ability to pay, finding he has a much higher earning capacity, and he was awarded the Corporations and will be in a substantially better financial position. The court found Steven Orwig will receive rental income from the Corporations, and he will receive a greater distribution of the marital assets as well as marital debt. The court explained it took into consideration the length of the marriage, the parties' ages, Steven Orwig's much high earning capacity, Steven Orwig was awarded the Corporations and property, the parties' monthly expenses, the parties' health, Mary Orwig was assessed the marital waste related to the Arizona ranch, and the marital waste that was not assessed. The court awarded Mary Orwig $5,500 a month in spousal support for ten years and also noted the amount was increased by the cost of the medical insurance Steven Orwig was ordered to pay for Mary Orwig.

[¶38] Although Mary Orwig contends there was no evidence of any past, present, or future income from a horse business, evidence established Mary Orwig was attempting to sell horses. The court found the horses were worth $222,396, and awarded all of the horses to Mary Orwig. Evidence supports the court's finding that Mary Orwig received income-earning horses. Under the

12

*Ruff-Fischer* factors the court may consider the income-producing capacity of property.

[¶39] The district court made the required findings, and the evidence supports the court's findings. The court did not err in considering Mary Orwig's earning ability or the income-producing capacity of property awarded to her. We conclude the court's spousal support award is not clearly erroneous.

VII

[¶40] Steven Orwig argues the district court erred in ordering him to pay Mary Orwig's attorney's fees.

[¶41] The court may award attorney's fees in a divorce action under N.D.C.C. § 14-05-23. The district court has broad discretion to award attorney's fees under N.D.C.C. § 14-05-23. *O'Keeffe*, 2020 ND 201, ¶ 22. The court's decision will be reversed only if the court abused its discretion. *Id.* at ¶ 21. The court must make specific findings about the non-moving party's ability to pay and the moving party's need. *Id.* at ¶ 22.

[¶42] Under N.D.C.C. § 14-05-23, the district court awarded Mary Orwig some of the attorney's fees she requested, explaining:

> Steve is in a better financial position to pay the attorney's fees associated with these proceedings. In making this determination, the Court has factored in marital waste Mary incurred by unnecessary legal expenses during both the corporate action and the divorce action. However, this is offset by the potential income Steve will receive from the Corporations in the future without Mary's interference.

The court stated it was awarding the attorney's fees "as adequately proven" and ordered Steven Orwig to pay $45,000 in Mary Orwig's attorney's fees for the Garaas Law Firm and $60,000 for Erica Chisholm, who previously represented Mary Orwig in the divorce proceedings.

13

[¶43] Steven Orwig contends the district court erred in awarding the attorney's fees because Mary Orwig never provided any proof of her attorney's fees. "An award of attorney fees must generally be supported by evidence upon which the court can determine the requested fees are reasonable and legitimate." *Allmon v. Allmon*, 2017 ND 122, ¶ 26, 894 N.W.2d 869 (quoting *Whitmire v. Whitmire*, 1999 ND 56, ¶ 14, 59 N.W.2d 126). A trial court abuses its discretion by awarding attorney's fees unsupported by proper documentation upon which the court can determine the reasonableness or legitimacy of the requested fees. *See Whitmire*, at ¶ 15.

[¶44] Mary Orwig testified that $60,000 in attorney's fees for Chisholm and $45,000 in attorney's fees for the Garaas Law Firm were the correct amounts of her attorney's fees. She also testified that she has never seen a bill or invoice from Chisholm and she does not have any documentation of the fees, but her bankruptcy attorney told her the amount was $60,000. The record does not include any billing statements for Mary Orwig's requested attorney's fees for Chisholm or the Garaas Law Firm or an affidavit describing the specific legal services performed or the amount of time spent performing the services.

[¶45] Although the district court made findings about Mary Orwig's financial situation and needs in connection with the spousal support award and Steven Orwig's ability to pay, there was no evidence upon which the court could determine the reasonableness or legitimacy of the requested fees. *See Whitmire*, 1999 ND 56, ¶ 15. We conclude the district court abused its discretion by awarding attorney's fees without proper documentation supporting the fees. On remand, the court may allow Mary Orwig to submit supporting documentation from which the court can determine the reasonableness or legitimacy of the requested fees.

## VIII

[¶46] Steven Orwig asserts he should be awarded attorney's fees for the proceedings before the district court under N.D.C.C. § 28-26-01 and for the appeal under N.D.R.App.P. 38. He contends Mary Orwig has made frivolous arguments and has unnecessarily increased the costs of the litigation.

14

[¶47] Section 28-26-01(2), N.D.C.C., authorizes a court to award attorney's fees in a civil action upon finding a claim for relief was frivolous. "A claim for relief is frivolous for purposes of N.D.C.C. § 28-26-01(2) if there is such a complete absence of facts or law a reasonable person could not have expected a court would render a judgment in that person's favor." *N.D. Private Investigative & Sec. Bd. v. TigerSwan, LLC*, 2019 ND 219, ¶ 20, 932 N.W.2d 756.

[¶48] It is not clear from the record that Steven Orwig requested the district court award him any attorney's fees under N.D.C.C. § 28-26-01. The court did not address any request for attorney's fees under N.D.C.C. § 28-26-01 in the divorce order. We will not address issues raised for the first time on appeal. *Grengs v. Grengs*, 2020 ND 242, ¶ 18, 951 N.W.2d 260.

[¶49] This Court may award attorney's fees under N.D.R.App.P. 38 if we determine an appeal is frivolous. An appeal is frivolous if it is flagrantly groundless, devoid of merit, or demonstrates a persistence in the course of litigation which could be seen as evidence of bad faith. *Frontier Fiscal Servs., LLC v. Pinky's Aggregates, Inc.*, 2019 ND 147, ¶ 21, 928 N.W.2d 449. Mary Orwig's appeal is not frivolous. We deny Steven Orwig's request for attorney's fees on appeal.

IX

[¶50] We have considered the parties' remaining issues and arguments and have determined they are either unnecessary to our decision or are without merit. We affirm the judgment in part, reverse in part, and remand.

[¶51] Jon J. Jensen, C.J.
    Gerald W. VandeWalle
    Lisa Fair McEvers
    Jerod E. Tufte
    Carol Ronning Kapsner, S.J.

[¶52] The Honorable Carol Ronning Kapsner, S.J., sitting in place of Crothers, J., disqualified.