# IN THE SUPREME COURT
## STATE OF NORTH DAKOTA

### 2024 ND 147

Megan Ann Solem Ritter,                                    Plaintiff and Appellee

v.

Philip Leslie Ritter,                                      Defendant and Appellant

### No. 20240041

Appeal from the District Court of Richland County, Southeast Judicial District, the Honorable Bradley A. Cruff, Judge.

AFFIRMED.

Opinion of the Court by McEvers, Justice.

Amy M. Clark, Wahpeton, ND, for plaintiff and appellee.

Will R. Budke, Wahpeton, ND, for defendant and appellant.

**Ritter v. Ritter**
**No. 20240041**

**McEvers, Justice.**

[¶1] Philip Ritter appeals from a divorce judgment. Philip Ritter argues the district court erred in valuing and distributing the marital estate, in awarding Megan Ritter spousal support, and calculating his child support obligation. We conclude the court did not clearly err in its valuation and distribution of the marital estate, in awarding Megan Ritter spousal support, or in calculating Philip Ritter's child support obligation. We affirm.

I

[¶2] Philip Ritter and Megan Ritter were married in Minnesota in May 2008. The parties have three minor children together—B.L.R., born in 2007; K.P.R., born in 2010; and M.A.R., born in 2015. Megan Ritter has another, non-joint child who resides with her.

[¶3] From approximately 2008 to 2014, Megan Ritter was the primary income-earner working as a nurse or in risk management at a medical facility. Philip Ritter has been employed as a territory manager selling medical equipment on a commission basis since 2014. In 2017, Philip Ritter was offered an opportunity which required moving to North Dakota. Philip Ritter's earnings have fluctuated over the years, including while the parties were married and during their separation. The testimony and documents submitted by the parties at trial show Philip Ritter earned: $364,294.82 in 2020; $479,208.96 in 2021; $240,549.38 in 2022; and $6,037.69 per week from January to May 2023.

[¶4] After moving the family to Wahpeton, Megan Ritter was unable to maintain her risk management position and obtained a part-time nursing position. In 2018, per the suggestion of Philip Ritter, Megan Ritter left her part-time position to stay home full-time. Megan Ritter remained at home with the children for approximately a year-and-a-half. In 2019, Megan Ritter obtained employment with her former employer in its risk management department working remotely earning a gross income of $68,368.78 in 2022.

[¶5] Megan Ritter commenced an action against Philip Ritter for divorce in July 2022. Trial was held in June 2023. At trial, both parties submitted exhibits and testified. The parties disputed the value of the marital home, including the value of a kitchen remodel that was still uncompleted at the time of trial. Also at issue was Philip Ritter's income for purposes of child support and spousal support, as well as a number of the parties' debts.

1

[¶6]    In November 2023, the district court entered an order for judgment and an addendum showing the itemization of the marital estate asset and debt distribution. The court awarded Megan Ritter primary residential responsibility of the children and awarded the parties joint decision-making responsibility; valued and distributed the marital property and debt; awarded Megan Ritter spousal support in the amount of $2,000 per month from January 1, 2024 to October 1, 2033; and awarded Megan Ritter child support in the amount of $4,023 per month. Judgment was entered in December 2023. Philip Ritter appeals.

II

[¶7]    Philip Ritter argues the district court erred in valuing the parties' marital home, distributing the parties' assets and debts, and not requiring the parties to refinance the marital home.

[¶8]    These issues are subject to the clearly erroneous standard of review.

> A district court's property valuations and division are findings of fact, which will not be reversed on appeal unless they are clearly erroneous. A finding of fact is clearly erroneous when it is induced by an erroneous view of the law, there is no evidence to support it, or, after reviewing the entire record, this Court is left with a definite and firm conviction a mistake has been made. The district court's valuations depend on the evidence the parties present, and we presume the court's valuations are correct. A court's property valuation is not clearly erroneous if it is within the range of evidence presented. In an appeal after a bench trial, this Court will not second-guess a district court's credibility determinations.

*Orwig v. Orwig*, 2021 ND 33, ¶ 22, 955 N.W.2d 34 (cleaned up).

[¶9]    The district court must make an equitable distribution of the parties' property and debts. N.D.C.C. § 14-05-24(1). In doing so, the court must consider all of the parties' assets and debts and apply the *Ruff-Fischer* guidelines. *Anderson v. Anderson*, 2023 ND 86, ¶ 3, 990 N.W.2d 581. Although specific findings are not required under each *Ruff-Fischer* guideline, the court must state the rationale for its distribution. *Willprecht v. Willprecht*, 2020 ND 77, ¶ 19, 941 N.W.2d 556. The *Ruff-Fischer* guidelines include:

> [T]he respective ages of the parties, their earning ability, the duration of the marriage and conduct of the parties during the marriage, their station in life, the circumstances and necessities of each, their health and physical condition, their financial circumstances as shown by the property owned at

2

the time, its value at the time, its income-producing capacity, if any, whether accumulated before or after the marriage, and such other matters as may be material.

*Orwig*, 2021 ND 33, ¶ 35 (quoting *Tarver v. Tarver*, 2019 ND 189, ¶ 15, 931 N.W.2d 187).

A

[¶10]  Philip Ritter argues the district court erred in calculating the value of the marital home because the tax-assessed value of the home should have been calculated by multiplying the assessed value by approximately 118%, not 110%, to account for comparable homes selling in excess of assessed values. Philip Ritter also argues the kitchen remodel was undervalued at $30,000, resulting in a lower and incorrect valuation of the marital home. Megan Ritter argued the court's calculation of the marital home was not clearly erroneous because it incorporated both parties' methods of valuation and included the value of the kitchen renovations.

[¶11]  To determine the value of the marital home, the district court relied on (1) the parties' testimony regarding the home's current value and the value of the kitchen remodel—no appraisal was provided, (2) the deed showing a purchase price of $236,000, and (3) the most recent tax statement showing a full and true value of $271,400. Based on the evidence presented, the court found the kitchen renovation cost $30,000 and added that amount to the total value of the home. The court also incorporated a 10% increase in the value of the marital home to account for homes often selling for more than the tax-assessed value. The court concluded the value of the marital home was $328,540.

[¶12]  Philip Ritter argues that the testimony only supports an increased value of 18.13% as his basis to show clear error. Philip Ritter also argues the court erred in valuing the kitchen remodel. As to the valuation of the marital home, the range of evidence provided by the parties established the value of the marital home between $300,000 and $400,000. The district court used a combination of the parties' valuations based on the evidence presented to determine the value of the marital home was $328,540. The value of the kitchen remodel was also within the range of the evidence. A trial court may weigh spouses' competing testimony on the value of marital property. *Braun v. Braun*, 532 N.W.2d 367, 370 (N.D. 1995). We conclude the court's valuation of the marital home is not clearly erroneous. *See Langwald v. Langwald*, 2016 ND 81, ¶¶ 5-7, 878 N.W.2d 71 (affirming a trial court's valuation of real estate as the findings were within the range of evidence provided).

3

[¶13]   Philip Ritter argues the district court erred in allocating him the Bank of America Platinum Plus Credit Card debt. Philip Ritter also argues the equalization payment was clearly erroneous in light of the home valuation error and erroneous distribution of credit card debt. Megan Ritter argues the court properly distributed the assets and debts.

[¶14]   The district court reviewed the *Ruff-Fischer* guidelines and found they favored Megan Ritter receiving a larger share of the marital estate. However, the court divided the marital estate *equally* because Megan Ritter testified she would accept an equal distribution of the marital estate if Philip Ritter was allocated both the Bank of America Platinum Plus Credit Card debt and the Bremer Bank Line of Credit debt.

[¶15]   Philip Ritter does not contest his obligation for the Bremer Bank Line of Credit debt. Regarding the Bank of America Platinum Plus Credit Card debt, Philip Ritter argues the district court erred by not including the entire debt as part of the marital estate and the court's findings were inconsistent with the testimony at trial. The court found the card was opened after the divorce proceedings began and held an existing balance of $18,127 at the time of trial. The court found the account statement showed a $12,000 balance transfer, which was supported by Philip Ritter's testimony that he used the credit card to take on debts transferred from other credit cards. The credit card statement showed a previous balance of $5,825.78 prior to the $12,000 balance transfer. Regarding the remaining debt, the court found:

> However, there is no explanation for the $5,825 balance before the $12,000 balance transfer. Page 3 of the exhibit indicates only $7,581 of the total balance is interest free until October 20, 2024. Interest of $360 was charged for the current billing cycle and $529 year to date, a significant amount for two and 2/3 months. The court considers the existence of any such debt as part of the marital estate, but due to Philip failing to provide an accounting regarding anything in excess of the $12,000 balance transfer, and due to the debt presumably being used for Philip's sole benefit, the court assigns this debt a value of $12,000 and finds that Philip shall be solely responsible for the entire debt with no credit for the unexplained $6,127.

[¶16]   Philip Ritter is correct that the district court erred in classifying $360 of the debt as interest when it should have found it to be a balance transfer fee. Regardless of this minor error, the court found Philip Ritter's failure to provide an accounting of the remaining debt justified allocating the Bank of America Platinum Plus Credit Card debt and the Bremer

Bank Line of Credit debt to Philip Ritter. The court then divided the remainder of the marital estate equally which resulted in an equitable distribution. Megan Ritter was awarded $360,557 of the marital estate and Philip Ritter was awarded $363,542. The court ordered Philip Ritter to pay Megan Ritter an equalization payment of $1,492 to account for the difference in marital property received. Any error made in classifying $360 as interest rather than a balance transfer fee is de minimis and is not reversible error.

[¶17]  We conclude the district court did not clearly err in distributing the marital estate and awarding an equalization payment to Megan Ritter because the court explained its rationale for the division, there is no substantial disparity between the property awarded to the parties, and the equalization payment accounted for the difference in marital assets received. We conclude the evidence supports the court's allocation of the marital assets and debts.

C

[¶18]  Philip Ritter argues the district court erred by failing to separate the parties' debts by not requiring refinancing of the marital home mortgage. He argues the parties' debts remain comingled and allow a third-party creditor to maintain an action to satisfy the outstanding mortgage against both parties. Megan Ritter argues the court's decision not to require refinancing was justified under the totality of the circumstances and the court's inclusion of an indemnification clause would prevent Philip Ritter's alleged situation.

[¶19]  Here, the district court awarded the marital home to Megan Ritter. Philip Ritter did not object to the award but requested a portion of the equity of the home. The court concluded Megan Ritter would not be required to refinance the mortgage on the marital home because the unknown joint line of credit debt—the Bremer Bank Line of Credit in the amount of $34,000—incurred by Philip Ritter resulted in her likely inability to refinance. The court also included an indemnity clause in the divorce judgment which provided that neither party would be required to refinance any joint debt unless a party defaults, in which case, that party would be required to refinance the debt or sell the asset securing the debt and apply the proceeds. Philip Ritter has provided no authority to support his argument that it is error to include an indemnity provision for joint debts. He does provide authority regarding the rights of third-party creditors. *See Recovery Res., LLC v. Cupido,* 2012 ND 143, ¶ 10, 818 N.W.2d 787. However, *Cupido* also provides that an ex-spouse has recourse in the event of default. *Id.* at ¶¶ 13-16 (a court's inclusion of an indemnity clause in the divorce judgment allows the ex-spouses to take recourse in the

5

event of a default on the parties' joint debt incurred during the marriage); *see also* N.D.C.C. §§ 14-07-08(3) and 14-07-10. We are not persuaded by his arguments that the court erred in this regard.

[¶20] We conclude the evidence supports the district court's decision and the court did not clearly err in not requiring refinancing of the marital home mortgage upon divorce.

[¶21] Based on our review of the record, we conclude the district court's findings regarding the valuation and division of marital property are not clearly erroneous.

III

[¶22] Philip Ritter argues the district court erred in awarding Megan Ritter spousal support. Specifically, Philip Ritter argues the court's findings on the parties' monthly expenditures were inaccurate, as Megan Ritter did not separate her expenses from their children's expenses, and the court erred in using Megan Ritter's net income for calculating the award of spousal support, as it used Philip Ritter's gross income to calculate his obligation. Megan Ritter argues the court properly awarded her spousal support.

[¶23] Section 14-05-24.1, N.D.C.C., governs spousal support. The applicable 2015 version of N.D.C.C. § 14-05-24.1, provides in pertinent part:

> 1. Taking into consideration the circumstances of the parties, the court may require one party to pay spousal support to the other party for a limited period of time in accordance with this section. The court may modify its spousal support orders.

[¶24] When determining whether to award spousal support, "the court must consider the *Ruff-Fischer* guidelines, the needs of the spouse seeking support, and the ability of the other spouse to pay." *Quamme v. Quamme*, 2021 ND 208, ¶ 14, 967 N.W.2d 452 (quoting *Willprecht*, 2020 ND 77, ¶ 40). "[T]he district court is not required to provide a complete calculation of each parties' assets, debts, and expenses, but 'a clear description of the financial situation of each party is helpful for this Court in understanding the court's rationale in awarding spousal support.'" *Id.* (quoting *Willprecht v. Willprecht*, 2021 ND 17, ¶ 11, 954 N.W.2d 707). A district court's decision about spousal support is a finding of fact, which will not be reversed on appeal unless it is clearly erroneous. *Tarver*, 2019 ND 189, ¶ 15. "We must understand the basis for the district court's decision before we can decide whether the findings of fact are clearly erroneous." *Lorenz v. Lorenz*, 2007 ND 49, ¶ 9, 729 N.W.2d 692. "The district court must adequately explain the basis for its decision,

6

but we will not reverse a district court's decision when valid reasons are fairly discernable, either by deduction or by inference." *Id.* (cleaned up); *see Pearson v. Pearson*, 2009 ND 154, ¶ 13, 771 N.W.2d 288.

[¶25] The district court analyzed the *Ruff-Fischer* guidelines and considered Megan Ritter's needs versus Philip Ritter's ability to pay. The court found:

> In applying the Ruff-Fischer guidelines, Megan and Philip are approximately the same age. However, as previously discussed herein, Philip's earning ability far surpasses Megan's. Megan lost opportunities in her career to allow Philip to accept his position . . . and Megan put her career on hold to raise the parties' children and become the primary caregiver while Philip pursued employment opportunities. While Megan currently holds full-time employment as a registered nurse . . . Megan's earnings are far less than that of Philip's. At this station of Megan's life, it is unlikely that her earnings will increase significantly from that which she currently receives. While both parties are in good health, this is a long-term marriage, and an award of spousal support to Megan is appropriate and warranted.

[¶26] The district court further found Megan Ritter's 2022 gross annual income was $68,368.76, and her net take-home pay after taxes and retirement deductions was $46,322.87 or $3,860 per month. The court found Megan Ritter had monthly expenses of $11,105, and that this amount reflected the funds necessary for Megan Ritter to maintain the standard of living she experienced during the parties' marriage. The court found Philip Ritter did not dispute Megan Ritter's monthly expenses or argue that they were unreasonable. The court did note that the parties would need to make adjustments as they were not going to be able to continue with the same standard of living they enjoyed during their marriage. The court then calculated the difference between Megan Ritter's net monthly income and her monthly expenses, and determined a shortfall of $7,245 per month existed. This amount did not include the child support Megan Ritter would receive. When considering the child support of $4,023 per month, Megan Ritter's expenses were $3,222 more per month than her income. We conclude these amounts are supported by the record.

[¶27] Based on the circumstances of the case, the district court determined an award of spousal support to Megan Ritter was warranted to ease the burdens and disadvantages of divorce and to maintain the standard of living the parties enjoyed during their marriage. *See Innis-Smith v. Smith*, 2018 ND 34, ¶ 22, 905 N.W.2d 914 (an award of spousal support is appropriate when a substantial disparity in income and earning capacities of the parties exists, and such cannot be adjusted in the distribution of the marital estate). Philip Ritter's

7

argument that the court's findings are inaccurate appear to be a request for this Court to reweigh the evidence. We will not reweigh the evidence or reassess the credibility of witnesses under the clearly erroneous standard and we will not substitute our judgment for that of the district court, even if we may have come to a different result. *Otten v. Otten*, 2023 ND 134, ¶ 11, 993 N.W.2d 523. We conclude the court did not clearly err in finding Megan Ritter was in need and an award of spousal support to Megan Ritter was warranted.

[¶28] Regarding ability to pay, the district court also found payment of spousal support to Megan Ritter would not cause undue economic hardship to Philip Ritter. The court found "Philip is paid on commission and has fluctuating income." The court found Philip Ritter's 2022 earnings were $240,549.38; his 2021 earnings were substantially higher (found to be over $479,000 in calculating child support); and his 2023 earnings appeared on par with or better than his 2022 earnings. The court found: "Regardless of whether Philip makes $200,000.00, $300,000.00, or $400,000.00 a year, the court finds that Philip has adequate income to pay spousal support to Megan in an amount sufficient to ease the burdens of the divorce."

[¶29] In reaching its decision the district court considered Philip Ritter's financial affidavit stating his monthly expenses were $12,890.69. The court found not all the monthly expenses were justified, noting "many of his expenses [were] credit card balances (several of which appear to be paid now), which are not ongoing monthly expenses." The court also considered Philip Ritter's testimony that "one person can live off of $65,000.00 per year."

[¶30] The district court did not provide a mathematical calculation of Philip Ritter's ability to pay spousal support and based his ability to pay spousal support on the evidence presented which reflected gross income in a range of $240,000 to $479,000 for the years 2020 to 2023 and monthly expenses of something less than $12,890.69.

[¶31] While the district court's findings could have been more detailed, we are able to discern how Philip Ritter's lowest gross income at $240,000 would result in a monthly net income sufficient to pay spousal support of $2,000 per month in addition to his child support obligation of $4,023 per month. Philip Ritter suggests we look to his child support obligation which indicates that his *net* income would not be adequate to pay spousal support. A review of his child support obligation indicates the difference between Philip Ritter's gross income and net income for child support purposes is approximately 18%. Using his lowest gross income of $240,549 and reducing it by 18% results in a net income

of $197,250, or $16,438 per month. It appears that the court was using net income when it stated the range of Philip Ritter's income from $200,000 to $400,000 per year, as the evidence of the gross income before the court was substantially more than the range listed in the finding. After subtracting Philip Ritter's child support of $4,023 and spousal support of $2,000, his remaining monthly income of $10,415 is well within what he testified a single person can live on, and appears to leave him with an adequate income to pay his expenses. Even with the spousal support, Megan Ritter is left with a deficit to meet her needs. The court found both parties may be required to adjust their standard of living somewhat, but concluded both parties must share the burdens of the divorce. Based on the evidence presented, we conclude the court did not clearly err in finding the $2,000 spousal support payment would not result in an undue financial burden for Philip Ritter and Philip Ritter had the ability to pay spousal support.

[¶32]   In looking at the parties' monthly earnings and expenses, we conclude the evidence in the record supports the district court's decision to award spousal support and findings on the duration and award of spousal support. The court analyzed the applicable *Ruff-Fischer* guidelines, considered the party's need for spousal support and the other party's ability to pay, and adequately explained how it arrived at its calculation of spousal support. We conclude the court's award of spousal support to Megan Ritter in the amount of $2,000 per month for 9.9[1] years was not clearly erroneous.

IV

[¶33]   Philip Ritter argues the district court erred in applying the child support guidelines and determining his gross annual income by averaging three years' worth of his earnings. Megan Ritter argues the court correctly calculated Philip Ritter's income because the court

---

[1] It appears the district court applied the amended version of N.D.C.C. § 14-05-24.1 by calculating the length spousal support is to be paid based on the years of marriage. The statute was amended in 2023 and took effect August 1, 2023. The amended legislation "applies to actions for divorce or legal separation *filed* on or after August 1, 2023." 2023 N.D. Sess. Laws ch. 143, § 2 (emphasis added). Megan Ritter filed for divorce on July 7, 2022; therefore, the 2015 version of N.D.C.C. § 14-05-24.1 governs. Under the applicable version of the statute the court must specify a time period for spousal support. Neither party argues they were prejudiced by the application of the August 2023 amended version of N.D.C.C. § 14-05-24.1, or that it affected their substantial rights. We conclude that any error in the application of the August 2023 amended version of N.D.C.C. § 14-05-24.1 was harmless. *See* N.D.R.Civ.P. 61 ("At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights.").

considered the nature of his commission-based, fluctuating income and, as a result, averaged Philip Ritter's three years' worth of earnings provided.

[¶34] This Court's review of a trial court's decision on child support is well established:

> Child support determinations involve questions of law which are subject to the de novo standard of review, findings of fact which are subject to the clearly erroneous standard of review, and may, in some limited areas, be matters of discretion subject to the abuse of discretion standard of review. A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if no evidence exists to support it, or if, on the entire record, we are left with a definite and firm conviction that a mistake has been made.

*Williams v. Williams*, 2023 ND 240, ¶ 14, 999 N.W.2d 192 (quoting *Updike v. Updike*, 2022 ND 99, ¶ 5, 974 N.W.2d 360). "The amount of child support calculated under the guidelines is rebuttably presumed to be the correct amount of child support in all child support determinations." *Id*. (quoting *Thompson v. Johnson*, 2018 ND 142, ¶ 9, 912 N.W.2d 315). "A court errs as a matter of law if it does not comply with the requirements of the child support guidelines. As a matter of law, the court must clearly set forth how it arrived at the amount of income and level of support." *Quamme*, 2021 ND 208, ¶ 5 (cleaned up).

[¶35] Child support determinations are governed by N.D. Admin. Code § 75-02-04.1. *Williams*, 2023 ND 240, ¶ 15. "To determine the amount of child support required by the guidelines, a proper finding of net income is 'essential.'" *Quamme*, 2021 ND 208, ¶ 6 (citing *Halberg v. Halberg*, 2010 ND 20, ¶ 10, 777 N.W.2d 872); *see also* N.D. Admin. Code §§ 75-02-04.1-02(3), (6), (7). "An obligor's net income is calculated by determining his or her gross income and subtracting the items listed in the guideline definition of 'net income.'" *Id*. (citing *Halberg*, at ¶ 10); *see also* N.D. Admin. Code § 75-02-04.1-01(6) (defining net income).

[¶36] "The guideline definition of gross income is very broad and is intended to include any form of payment to an obligor, regardless of source, which is not specifically excluded under the guidelines." *Quamme*, 2021 ND 208, ¶ 6 (cleaned up); *see Berge v. Berge*, 2006 ND 46, ¶ 12, 710 N.W.2d 417. Certain types of income are specifically provided for by the child support guidelines, including commissions. *See* N.D. Admin. Code § 75-02-04.1-01(4)(b) (examples of gross income). Under the child support guidelines, a district court

may average an obligor's income when calculating his or her income for child support purposes if the obligor has a fluctuating income.

> Income must be sufficiently documented through the use of tax returns, current wage statements, and other information to fully apprise the court of all gross income. Where gross income is subject to fluctuation, regardless of whether the obligor is employed or self-employed, information reflecting and covering a period of time sufficient to reveal the likely extent of fluctuations, not to exceed five years, must be provided.

N.D. Admin. Code § 75-02-04.1-02(7). "Averaging fluctuating income is also appropriate under the child support guidelines. The guidelines specifically provide where gross income is subject to fluctuation, information reflecting and covering a period of time sufficient to reveal the likely extent of fluctuations must be provided." *Schiff v. Schiff*, 2000 ND 113, ¶ 38, 611 N.W.2d 191 (cleaned up).

[¶37] Here, the district court explained how it arrived at its calculation for Philip Ritter's child support obligation. The court found Philip Ritter's earnings were commission-based and his income fluctuated over time. Megan Ritter supplied the court with financial statements, tax returns, W-2s, and paystubs showing Philip Ritter's earnings from 2020, 2021, 2022, and January through May of 2023. Philip Ritter did not object to this financial information. The court averaged Philip Ritter's income according to the documents received into evidence reflecting his earned income for a three-year period. The court found averaging Philip Ritter's wages for a period of three years was appropriate to calculate child support finding he had an average gross monthly income of $24,982, with a net monthly income of $20,511. The court found Philip Ritter's child support obligation for the parties' three children was $4,023 per month, two children was $3,405 per month, and one child was $2,719 per month.

[¶38] In *Berge,* Meryem Berge argued the trial court should have applied a three- or five-year average to calculate Mark Berge's income for child support purposes. 2006 ND 46, ¶ 21. This Court reversed and remanded for a recalculation of Mark Berge's net income because the trial court did not disclose its reasons for choosing one method of averaging over another. *Id.* Here, unlike *Berge,* Philip Ritter did not argue below that the district court should have utilized an average of the income he earned over the previous five years to calculate his income for child support purposes. Nor did Philip Ritter submit documentation reflecting his earned income for the previous five years. The documents reflecting Philip Ritter's earned income were those submitted by Megan Ritter, and he did

11

not object to those documents below. Furthermore, as noted above, the court explained its reason for choosing a three-year average.

[¶39]  We conclude the district court correctly applied the child support guidelines when using a three-year average to calculate Philip Ritter's child support obligation, there is evidence in the record to support this finding, and, after a review of the entire record, we are not left with a definite and firm conviction a mistake has been made. Therefore, the court did not err in finding Philip Ritter must pay $4,023 per month in child support for the parties' three minor children.

V

[¶40]  We affirm the district court's judgment.

[¶41]  Jon J. Jensen, C.J.
Daniel J. Crothers
Lisa Fair McEvers
Jerod E. Tufte
Douglas A. Bahr