# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

### 2025 ND 32

Kristine Gail Walden,                                     Plaintiff and Appellee

    v.

Shay Alan Walden,                                      Defendant and Appellant

### No. 20240131

Appeal from the District Court of Richland County, Southeast Judicial District, the Honorable Bradley A. Cruff, Judge.

AFFIRMED.

Opinion of the Court by McEvers, Justice.

Tracey R. Lindberg, Pelican Rapids, MN, for plaintiff and appellee.

Erica L. Chisholm, Wahpeton, ND, for defendant and appellant.

**McEvers, Justice.**

[¶1]   Shay Walden appeals from a district court's findings of fact, conclusions of law, and order for judgment, and judgment and decree. Shay Walden argues the court erred in awarding spousal support, distributing the marital property and debt, and awarding attorney's fees. We affirm.

I

[¶2]   Shay Walden and Kristine Walden were married on April 14, 2016. The parties physically separated in June 2020. Kristine Walden initiated the divorce in September 2022. The parties have no joint children. Trial was held in December 2023. At the time of trial, Kristine Walden was 54 years old, and Shay Walden was 53 years old. Shay Walden works full-time, is self-employed, owning Shay Walden Construction, and provides independent contracting services to another business. Kristine Walden works part-time for a holding company of a magazine that she founded and previously owned but sold to her children in 2018.

[¶3]   At trial, the district court heard testimony from both parties regarding assets, debts, and the conduct leading to the breakdown of their marriage. Domestic violence perpetrated by Shay Walden against Kristine Walden left her with a permanent eye injury. After the trial, the court divided the marital property and debt, and ordered Shay Walden to pay Kristine Walden spousal support of $1,000 per month for seven years, property payments of $8,587 and $35,000, and attorney's fees of $8,350. The court also assigned debt of $35,433.66 to Shay Walden, which he incurred after the commencement of the proceeding. Shay Walden timely appealed.

II

[¶4]   Shay Walden argues the district court clearly erred in awarding spousal support because there was no showing of need and an ability to pay spousal support. Shay Walden further argues the court deviated beyond the statutory

limit for spousal support under N.D.C.C. § 14-05-24.1 and attempted to equalize the incomes of the parties.

A

[¶5] District courts may award spousal support under N.D.C.C. § 14-05-24.1. The court must consider the *Ruff-Fischer* guidelines, the needs of the spouse seeking support, and the ability of the other spouse to pay when determining whether to award spousal support. *Quamme v. Quamme*, 2021 ND 208, ¶ 14, 967 N.W.2d 452. The *Ruff-Fischer* guidelines include:

> The respective ages of the parties, their earning ability, the duration of the marriage and conduct of the parties during the marriage, their station in life, the circumstances and necessities of each, their health and physical condition, their financial circumstances as shown by the property owned at the time, its value at the time, its income-producing capacity, if any, whether accumulated before or after the marriage, and such other matters as may be material.

*Id.* Although the court need not make specific findings on each *Ruff-Fischer* factor, we must be able to determine the reasons for the court's decision. *Id.* "The district court is not required to provide a complete calculation of each parties' assets, debts, and expenses, but a clear description of the financial situation of each party is helpful for this Court in understanding the court's rationale in awarding spousal support." *Ritter v. Ritter*, 2024 ND 147, ¶ 24, 10 N.W.3d 75 (cleaned up). Decisions on spousal support are findings of fact reviewed under the clearly erroneous standard of review. *Id.* "A finding of fact is clearly erroneous when it is induced by an erroneous view of the law, there is no evidence to support it, or, after reviewing the entire record, this Court is left with a definite and firm conviction a mistake has been made." *Id.* ¶ 8. "The district court must adequately explain the basis for its decision, but we will not reverse a district court's decision when valid reasons are fairly discernable, either by deduction or by inference." *Id.* ¶ 24. A spousal support award based on need will be upheld when it falls within the range of the evidence presented. *Kaspari v. Kaspari*, 2022 ND 204, ¶ 11, 982 N.W.2d 291.

[¶6] The district court analyzed the *Ruff-Fischer* guidelines. The court considered the parties' ages and earning abilities, finding that: at the time of trial, Kristine Walden was 54 and Shay Walden was 53; Kristine Walden was not self-supporting as her gross monthly earnings were $2,400 and her living expenses were $6,400; Kristine Walden was unlikely to substantially increase her income prior to reaching retirement age due to her health issues and limited education; and Shay Walden was, and will continue to be, self-supporting based on his gross monthly earnings of approximately $12,500 and on being in good health.

[¶7] The district court found the marriage to be short-term and "an unhealthy and toxic relationship . . . marred by a series of domestic violence incidents perpetrated by Shay." The court found several instances of domestic abuse occurred during the marriage, including an instance when Shay Walden contacted Kristine Walden's face and eye causing permanent damage. The court found Kristine Walden left the marriage with "a permanent injury to her left eye that cannot be corrected with lenses," making it difficult for her to see out of that eye, further impacting her employability.

[¶8] During the marriage, Kristine Walden was diagnosed with multiple sclerosis, which the district court found limits her ability to walk significant distances, causes numbness in her lower legs, causes tingling in her arms, and impacts her face when it flares up. The court found Kristine Walden's multiple sclerosis "limits the time she can work, as well as the nature of the work she can do," and that her permanent eye injury caused by Shay Walden striking her also limits her work hours because the reduced vision in her left eye causes her right eye to compensate and become strained. Despite his claims of health issues at trial, the court noted that in his interrogatory Shay Walden denied he had any health problems that could limit his present or future employability.

[¶9] Given the district court findings that Kristine Walden's monthly living expenses were approximately $6,400 and her monthly gross income was $2,400, even with the spousal support award, Kristine Walden is left with a deficit to meet her needs. Shay Walden argues Kristine Walden inflated her monthly expenses by over half and certain inflated expenses should have been subtracted by the court when finding Kristine Walden was not self-supporting. Shay

3

Walden's argument appears to ask this Court to reweigh the evidence, which we will not do. *See Ritter*, 2024 ND 147, ¶ 27 ("We will not reweigh the evidence or reassess the credibility of witnesses under the clearly erroneous standard and we will not substitute our judgment for that of the district court, even if we may have come to a different result."). There is evidence supporting the court's findings that Kristine Walden's living expenses were roughly $6,400. She submitted a summary of her monthly expenses as an exhibit at trial, testified about the expenses, and was subject to cross-examination regarding her monthly expenses. We conclude the court did not clearly err in finding Kristine Walden's monthly expenses were $6,400 and that she was in need of spousal support.

[¶10] The district court indicated it was unsure of Shay Walden's ability to pay spousal support without undue hardship because he did not provide evidence of his net income. However, the court found Shay Walden earned approximately $12,500 per month in gross income. From the court's findings, it is discernable how Shay Walden has the ability to pay $1,000 per month in spousal support. The court found Shay Walden's monthly expenses to be $5,017. The court noted Shay Walden's expensive derby hobby and recent purchase of an $86,000 pickup, and found that by making reasonable adjustments to his purchases and lifestyle, the spousal support award would not cause Shay Walden undue financial hardship. Although the court did not provide a mathematical calculation of Shay Walden's ability to pay spousal support, his gross monthly income of $12,500 less his monthly expenses, leaves him $7,483 per month. Shay Walden failed to provide the court with evidence of his net income and now claims on appeal that the court erred in awarding spousal support due to a lack of showing an ability to pay. A party who fails to provide evidence of net income waives any argument that he or she did not have the ability to pay spousal support. The court did not clearly err in concluding Shay Walden had the ability to pay spousal support without undue hardship.

B

[¶11] Shay Walden argues the district court deviated beyond the statutory limit for spousal support under N.D.C.C. § 14-05-24.1.

4

[¶12] Under the current version of N.D.C.C. § 14-05-24.1, spousal support is limited in duration to certain percentages based on the number of years the parties were married unless the court makes written findings why a deviation in the length of the term of spousal support is necessary. It appears the district court applied the amended version of N.D.C.C. § 14-05-24.1 by calculating the length spousal support is to be paid based on the duration of the parties' marriage. The statute was amended in 2023 and took effect August 1, 2023. The amended version "applies to actions for divorce or legal separation *filed* on or after August 1, 2023." 2023 N.D. Sess. Laws ch. 143, § 2 (emphasis added).

[¶13] Kristine Walden initiated the divorce action in September 2022; therefore, the 2015 version of N.D.C.C. § 14-05-24.1 should have been applied by the district court. Under the applicable version of the statute, the court must specify a time period for spousal support. Shay Walden's argument is without merit under the previous version of the statute, as the court set a specific time period for the spousal support. Kristine Walden did not cross-appeal on this error and argues neither party objected in the district court to the application of the August 2023 amended version of N.D.C.C. § 14-05-24.1 or that it affected their substantial rights. We conclude that any error in the application of the August 2023 amended version of N.D.C.C. § 14-05-24.1 was harmless. *See* N.D.R.Civ.P. 61 ("At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights."); *see also Ritter*, 2024 ND 147, ¶ 32 n.1.

[¶14] We conclude the evidence in the record supports the district court's decision to award spousal support, including the duration and amount of spousal support awarded. The court analyzed the *Ruff-Fischer* factors, considered Kristine Walden's need for spousal support and Shay Walden's ability to pay without an undue financial burden, and adequately explained how it arrived at its calculation of spousal support. Based on the evidence presented, we conclude the court did not clearly err in awarding Kristine Walden $1,000 per month in spousal support for seven years.

[¶15] Shay Walden argues the district court erred in its property and debt distribution by ordering him to pay Kristine Walden the amounts of $8,587—representing a portion of the marital home's equity—and an additional $35,000—representing approximately one-half of Kristine Walden's medical debt. Shay Walden further argues the court erred by attributing to him a debt of $35,433.66 in "unaccounted funds" taken out of the marital estate after commencement of the divorce proceeding.

[¶16] When granting a divorce, a district court must value the parties' property and debts and "make an equitable distribution." N.D.C.C. § 14-05-24(1). Our standard for reviewing a court's marital property distribution is well-established:

> This Court reviews a district court's distribution of marital property as a finding of fact, and will not reverse unless the findings are clearly erroneous. A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if there is no evidence to support it, or if, after reviewing all the evidence, we are left with a definite and firm conviction a mistake has been made. We view the evidence in the light most favorable to the findings, and the district court's factual findings are presumptively correct. Valuations of marital property within the range of the evidence presented are not clearly erroneous. A choice between two permissible views of the evidence is not clearly erroneous if the district court's findings are based either on physical or documentary evidence, or inferences from other facts, or on credibility determinations.

*Senger v. Senger*, 2022 ND 229, ¶ 7, 983 N.W.2d 160.

[¶17] A district court considers the *Ruff-Fischer* factors when distributing marital property. *Senger*, 2022 ND 229, ¶ 8. Although the court need not make specific findings on each *Ruff-Fischer* factor, we must be able to determine the reasons for the court's decision. *Id.* The court must consider the length of a marriage in determining an equitable division of the marital estate under the *Ruff-Fischer* guidelines. *Hollingsworth v. Hollingsworth*, 2025 ND 8, ¶ 16, --- N.W.3d ---. "No bright-line rule exists to determine whether a marriage is short or long term." *Id.*

"In a short-term marriage, the district court may distribute property based on what each party brought into the marriage." *Id.*

[¶18] All property held jointly or individually by either party is considered marital property. *Langwald v. Langwald*, 2016 ND 81, ¶ 10, 878 N.W.2d 71. A set method for dividing marital property is not required—the division is based on the particular circumstances of each case. *Id.* ¶ 11. "A property division need not be equal to be equitable, but a substantial disparity must be explained." *Id.*

[¶19] Shay Walden argues the district court's debt distribution was not equitable based on the short length of the marriage and the spousal support awarded. The court found:

> The net property and debt distribution is notably lopsided in favor of Shay. It is important to note that it is a short-term marriage to which Kristine had a negative net worth when she entered the marriage. She brought little in assets as her business was only worth $10,000, and she had a significant tax debt. Shay brought assets with equity which include the homestead, business equipment, personal property, and some debt. A short-term marriage with considerable disparity regarding what each brought to the union does not warrant an equal distribution and the Court is not striving to accomplish that. The Court is required to provide an equitable distribution and believes this order does so.

The court considered all of the parties' marital assets and debts. Shay Walden was awarded a positive net distribution of $46,975, while Kristine Walden was awarded a $52,729 negative net distribution.

[¶20] Shay Walden argues the district court erred in requiring him to pay $8,587 to Kristine Walden for her contributions to the marital home that he brought into the marriage. Shay Walden does not dispute the valuation of the marital home on appeal, merely that the court ordered him to pay a portion of the home's equity to Kristine Walden. The court considered Kristine Walden's financial contributions to the home, finding:

> The Court arrived at this valuation on the basis that Shay has owned the home for approximately 24 years and the parties were married

7

for 6 of those years. The home is valued at $68,700, one-fourth of the value of the home is $17,175. With both contributing to the value by paying on the mortgage and for improvements, the value is divided by two to arrive at the sum of $8,587.

The court found both parties paid on a mortgage to the property and contributed to new additions to the house. This finding is supported by the evidence. Kristine Walden testified that she paid $27,927 to remodel the house and asked to be reimbursed for the money she put into the house. While Shay Walden disputed these contributions, testifying that Kristine Walden helped "a few times" with the mortgage, we will not reweigh the evidence on appeal. The court did not clearly err in ordering Shay Walden to pay Kristine Walden $8,587 as part of the property distribution.

[¶21] Shay Walden also disputes the district court ordering him to pay Kristine Walden $35,000 for approximately one-half of her medical debt incurred during the marriage. Medical debt is a marital debt subject to an equitable distribution under N.D.C.C. § 14-05-24(1). *See Schiff v. Schiff,* 2013 ND 142, ¶ 15, 835 N.W.2d 810 (concluding the district court erred in finding a medical debt incurred during the marriage was not a marital debt). The court found that Kristine Walden incurred $69,305 in medical debt for her multiple sclerosis diagnosis and treatment that occurred during the marriage. Shay Walden does not dispute the amount of Kristine Walden's medical debt. He argues he should not be responsible for this debt because it was a short-term marriage. In a short-term marriage, the court may return to the parties what they brought into the marriage, but the division of property and debt must be equitable. *See Lill v. Lill*, 520 N.W.2d 855, 857 (N.D. 1994); N.D.C.C. § 14-05-24(1). While the court had discretion to return the parties to their premarital economic status, it also had discretion to equitably divide the marital debt. Shay Walden has not demonstrated the court clearly erred in ordering him to pay approximately one-half of Kristine Walden's medical debt incurred during the marriage.

[¶22] Shay Walden's argument that the district court erred in assigning him $35,433.66 of debt he incurred after the divorce was commenced is not supported by adequate briefing regarding why the court erred, and we will not further address it. The district court's findings regarding its property and debt

8

distribution are within the range of evidence presented. We conclude the court's property division was not clearly erroneous.

IV

[¶23] Shay Walden argues the district court erred in awarding Kristine Walden $8,350 in attorney's fees because he had already been sanctioned for delaying the proceeding. He argues the court abused its discretion by ordering him to pay additional attorney's fees and in light of the property distribution in a short-term marriage.

[¶24] A district court has considerable discretion in awarding attorney's fees, and its decision will not be overturned on appeal unless the court abused its discretion. *Bladow v. Bladow*, 2005 ND 142, ¶ 15, 701 N.W.2d 903. "A district court abuses its discretion when it acts in an arbitrary, unconscionable, or unreasonable manner, or when its decision is not the product of a rational mental process leading to a reasoned determination." *Sanders v. Bott*, 2024 ND 209, ¶ 13, 14 N.W.3d 86. In a divorce case, a district court may award either party attorney's fees under N.D.C.C. § 14-05-23. The guiding principle for an award of attorney's fees is one party's need and the other party's ability to pay. *Bladow*, ¶ 15. The court may also consider whether a party's actions have unreasonably increased the time and efforts spent on the dispute. *Id.* Generally, an award of attorney's fees must be supported by evidence on which the court can determine the requested fees are reasonable and legitimate. *Orwig v. Orwig*, 2021 ND 33, ¶ 43, 955 N.W.2d 34.

[¶25] In awarding attorney's fees, the district court found:

> In this case, Shay's failure to cooperate led to Kristine having to bring a motion to extend deadlines . . . ; then a motion to compel . . . ; a motion to change the pretrial to a scheduling conference; a motion for contempt . . . ; and finally the documents to issue a warrant of arrest due to his continued failure to comply. Shay was verbally ordered to pay Kristine $625 in attorney's fees at the March 27, 2023 hearing which he has failed to do. . . . Given Shay's unnecessary increase in the costs of this proceeding and the apparent disparity of

9

the parties' incomes, Kristine should be awarded $8,350 in attorney's fees.

There is evidence in the record to support the court's findings that Shay Walden's actions required Kristine Walden to incur additional attorney's fees in this proceeding. Shay Walden was verbally ordered to pay Kristine Walden $625 in attorney's fees, but he did not pay. Shay Walden did, however, pay $1,500 in attorney's fees after being ordered to do so. The order requiring him to pay $1,500 in attorney's fees included the $625 in attorney's fees verbally ordered. Kristine Walden submitted invoices outlining her attorney's fees as an exhibit at trial, and the award of $8,350 does not exceed the total reflected in the invoices. Considering Kristine Walden's need, Shay Walden's ability to pay, and his actions causing an increase in the costs of the proceeding, we conclude the court did not abuse its discretion in ordering Shay Walden to pay Kristine Walden attorney's fees.

V

[¶26] We do not address the other issues raised because they are either inadequately briefed, unnecessary to the decision, or are without merit. We affirm the district court's judgment.

[¶27] Jon J. Jensen, C.J.
Daniel J. Crothers
Lisa Fair McEvers
Jerod E. Tufte
Douglas A. Bahr

10